## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TOKYO SUSHI BUFFET & GRILL, INC.,
a corporation,

     Plaintiff,

     vs.

FORTUNE GROUP HOLDINGS, LLC,
a corporation,  also known as
FORTUNE GROUP HOSPITALITY, LLC.,
a corporation.

     Defendant

CIVIL DIVISION
C.A.  No.: #

**COMPLAINT**

Filed on behalf of Plaintiff,
Tokyo Sushi Buffet & Grill, Inc.

Counsel of Record for this Party:

Joseph R. Bock, Esq.
PA I.D. #35729
100 VIP Drive, Suite 210
Wexford, PA 15090
(724) 934-9300

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TOKYO SUSHI BUFFET & GRILL, INC.,
a corporation,                                  )        CIVIL DIVISION
                                                )        C.A.  No.: #
                                                )
                                                )
          Plaintiff,                            )
                                                )
                                                )
          vs.                                   )
                                                )
                                                )
                                                )
FORTUNE GROUP HOLDINGS, LLC,                    )
a corporation,  also known as                   )
FORTUNE GROUP HOSPITALITY, LLC.,                )
a corporation.                                  )
                                                )
                                                )
                                                )
                                                )
                                                )
          Defendant                             )
                                                )
                                                )

## COMPLAINT

NOW COMES the Plaintiff, Tokyo Sushi Buffet & Grill, Inc., a corporation, by and through

its attorney, Joseph R. Bock, Esq., and pursuant to Federal Rules of Civil Procedure, 3, 7(a), 11(b),

et.seq.,  files the within Complaint:

## Jurisdiction and Venue

1.       Plaintiff Tokyo Sushi Buffet & Grill, Inc. (hereinafter "Plaintiff" or "Plaintiff Tokyo

Sushi Buffet") is a duly incorporated Pennsylvania domestic business corporation with its registered

office, and principal place of business located at 4801 McKnight Road, Pittsburgh (Allegheny County), PA 15237.  For jurisdictional purposes, Plaintiff is a citizen of the Commonwealth of Pennsylvania.

2.     Plaintiff owns and operates an Asian-style seafood buffet/hibachi restaurant and bar in the North Hills area of Pittsburgh.  Xue Li Liu, Guo Qi Wang, and Kwan Poon were, at all times relevant hereto, authorized agents of Plaintiff Tokyo Sushi Buffet.  Plaintiff at all times relevant hereto acted by and through its authorized agents.

3.     Defendant Fortune Group Holdings, LLC (hereinafter "Defendant" or "Defendant Fortune Group") is an Ohio limited liability company, duly organized and incorporated under the laws of the State of Ohio.  Defendant Fortune Group Holdings has a principal place of business located at 4560 Hilton Corporate Drive, Columbus, OH 43232, which is the center of the corporation's service activities. Defendant Fortune Group is also known and operates as Fortune Group Hospitality, LLC. For jurisdictional purposes, Defendant is a citizen of the State of Ohio.

4.     Paul Liang represented himself as the President and CEO of Defendant Fortune Group. At all times relevant hereto, Liang acted as the authorized agent of Defendant Fortune Group.  Also acting as an authorized agent for the Defendant at all times relevant hereto was one Chuan Jian Zhang, a/k/a Kiven Zhang.

5.     Diversity jurisdiction lies with this Court, as the dispute involves citizens of different states and the amount in controversy exclusive of interest and costs, exceeds $75,000.00.

2

6.      Personal jurisdiction and venue properly lie with this Court.  Defendant Fortune Group lists its "Headquarters" at 1100 Liberty Avenue, Suite C-3, Pittsburgh, PA 15222. Several transactions out of which Plaintiff's claims arose occurred in the Pittsburgh area and involved Defendant's agents. Sufficient minimum contacts exist between the Defendant and this judicial district, making the Defendant amenable to suit herein.

## Predicate Facts

7.      During the third week of March, 2013, Paul Liang and several of his associates visited Plaintiff's restaurant.  Liang complimented Plaintiff on the restaurant and the quality of the food. Liang represented that he owned a hotel and resort with a water park, for which he had paid over $10 million (the "Fort Rapids Water Park" in Columbus, Ohio).  He complained that at the time, there was only a dine-in restaurant with mediocre food on the premises.

8.      Over the next four weeks, Liang actively solicited Plaintiff to bring its seafood buffet/ hibachi restaurant concept to the Fort Rapids Water Park.

9.      Liang insisted that Plaintiff's agents visit his resort. He arranged for them to visit on the last weekend of March, 2013.  The hotel and resort were extremely busy when Plaintiff's agents were there, and Liang said that it was representative of their normal business.

3

10.     Plaintiff's agents expressed their reluctance at getting involved, but Liang continued to actively solicit and persuade them.

11.     In the course of a meeting in Defendant's Pittsburgh office during the first week of April, 2013, Liang offered Plaintiff free rent, free utilities, free insurance, and free maintenance and cleaning.  Liang also offered to rebate to Plaintiff within three (3) years all construction monies Plaintiff would spend to customize the restaurant.

12.     In the course of another visit to Defendant's resort on the first weekend of April, 2013, Plaintiff's agents requested recent sales reports for the existing restaurant and bar. Liang provided Plaintiff with one sales report from March, 2013 which he said represented sales for the existing restaurant and bar.  The report showed gross sales of over $100,000.00. Liang stated that he had no additional reports with him; that they were back in his Pittsburgh office.

13.     On April 8, 2013, after Liang pressured Plaintiff to either accept or decline the proposal, Plaintiff provided Liang with a $20,000.00 deposit.  Liang indicated that he would have his attorney draw up an agreement for signature by April 15, 2013, and that Plaintiff would need to provide an additional $280,000.00 upon execution of the agreement.

## Count I
## Action for Rescission of Contract

14.     The allegations of paragraphs #1-13 of Plaintiff's Complaint are fully incorporated herein by reference thereto.

4

15.    On April 15, 2013, the parties executed a "Management Agreement" (attached hereto and marked Exhibit "A"), and Plaintiff tendered a payment of $280,000.00 to Defendant upon execution of the agreement at Defendant's Pittsburgh office.


16.    Defendant Fortune Group was represented in the agreement to be the "Owner" of the Fort Rapids Water Park which includes a restaurant facility inside the park located at 4650 Hilton Corporate Drive, Columbus, OH, 43232. (Recital clause). Additional terms of the agreement included, inter alia, that:

a) The Owner desires to retain (Plaintiff) as manager for management of the main restaurant and bar ("concessions") and (Plaintiff) as manager desires to be so retained, (Recital clause),

b) **(Plaintiff) as manager is granted exclusive possession and control of the concession space being managed, (1)(A),**

c) The Owner agrees to rebate 33% of the said paid (construction costs) amount at the end of the first year, the other 33% rebate will be rebated at the end of the second year of operations, and the final 33% rebate will be rebated at the end of the third year of operations, (1)(C),

d) **This agreement shall remain in effect for a period being on the date hereof and continuing for ten (10) years therefrom through and including April 14, 2023, (1)(D)(i),**

e) The parties acknowledge and agree that the services to be provided by the manager (Plaintiff) will consist of services provided at the concession itself, as well as services to be provided at the offices of the manager. The compensation to be paid to the manager as provided below will be the entire payment to the manager in connection with such services, (2)(B),

f) COMPENSATION. As compensation for its services to be performed pursuant to this agreement, the Owner shall pay to the manager (Plaintiff) a fee equivalent to forty percent (40%) of the net profits. (4).

17.    Over the ensuing months, Plaintiff proceeded to perform extensive renovations to the restaurant area. Plaintiff paid a total of $86,470.75 in construction supplies and wages to contractors

through the last week of June, 2013. Plaintiff purchased furniture, kitchen appliances, and restaurant equipment. Additionally, Plaintiff's agents devoted a considerable amount of time and effort to the renovation.

18.     During the last week of June, 2013, while Plaintiff's agents were working near the front counter of the restaurant, they discovered a "Lease Agreement with Option to Purchase" (attached hereto and marked Exhibit "B") dated March 14, 2013 between one Brownlee Reagan and Fortune Group Hospitality, LLC.   Brownlee Reagan is designated therein as "Lessor" and Fortune Group Hospitality, LLC is designated therein as "Lessee". Paul Liang executed the lease as "Managing Member" of Fortune Group Hospitality, LLC. Essential terms of the lease agreement provide, inter alia, that:

a) **Brownlee Reagan (Lessor) is the Owner of the Fort Rapids Indoor Water Park Resort, and Fortune Group Hospitality LLC (Lessee)** desires to lease the leased premises to continue to operate the business, (Recital clause),

b) **Lessor leased unto Lessee the leased premises for a term of three (3) years, commencing April 15, 2013 and terminating April 14, 2016**, (1.1),

c) Lessee shall have the right to sublease a portion, but not all, of the leased premises without the prior written consent of Lessor, (7.1),

d) PURCHASE OPTION. In the event Lessee wishes to exercise this option, Lessee may give Lessor written notice of exercise at any time after December 15, 2013 (up to) the last day of the term (April 14, 2016) for the total purchase price of $13.5 Million ($13,500,000.00), (14.2)(14.3)(b),

e) RENT. Lessee agrees to pay the Lessor $55,000.00 per month, payable on the first day of each month of the term, (1.2),

f) SECURITY DEPOSIT. Lessee shall deposit with Lessor the sum of $330,000.00 to secure the Lessee's full performance of all of its obligations under this lease, (1.6),

g) Lessee agrees to invest a further $670,000.00 into an escrow account that will be spent on direct operational costs….said funds will be deposited in the escrow

6

account on or before April 15, 2013, (1.7),

h)  Lessee shall, as part of its obligations under this lease, invest at least One Million Dollars ($1,000,000.00) in advertising the leased premises during calendar years 2013 and 2014, (1.8),

i)  **DEFAULT. The occurrence of any of the following acts or events shall constitute events of default under this lease:** Lessee fails to make any payment required when due and such failure continues for a period of 15 days after Lessor shall have given Lessee written  notice thereof. (8.1)(8.1)(a).

19.     Immediately upon discovering the "Lease Agreement with Option to Purchase", Plaintiff approached Paul Liang and confronted him with the document.  Plaintiff told Liang that Defendant had deceived Plaintiff. Plaintiff advised Liang that they were rescinding the agreement because of Defendant's actions, and they demanded the return of all monies paid to the Defendant pursuant to the agreement.

20.     Liang declined to return to Plaintiff any monies he received on behalf of the Defendant, and further, stated that all of the equipment and supplies purchased by Plaintiff for use in the concession area were now the property of Defendant.

21.     Plaintiff's counsel directed correspondence dated August 22, 2013 to the attention of Paul Liang, on behalf of Defendant (attached hereto marked exhibit "C"). Plaintiff's counsel provided Defendant with formal notice that Plaintiff had exercised its right of rescission, and demanded the return of all monies paid to the Defendant pursuant to the April 15, 2013 agreement.

22.     Upon discovery of the affirmative acts of concealment, non-disclosure, and misrepresentation by Defendant through its authorized agents, Plaintiff promptly exercised its right to

7

rescind the April 15, 2013 Management Agreement within a reasonable time. The Plaintiff's notice of rescission was given clearly, unambiguously, and unequivocally.

23.    The Defendant, by and through its authorized agents, breached the terms of the parties' agreement by, inter alia:

a) Falsely representing to Plaintiff that it was the Owner of the Fort Rapids Water Park, and  had the legal standing to enter into a ten (10) year term with Plaintiff for the lease and management of the main concession area,

b) Failing to disclose to Plaintiff material facts which, had Plaintiff known or been  aware of those facts, would have caused Plaintiff to decline to enter into the agreement,

c) Failing to disclose to Plaintiff  material facts which would have made Plaintiff aware that rather than obtaining a ten (10) year term for the lease and management of the concession space, Plaintiff was in fact obtaining only a three (3) year sublease of the concession space,

d) Failing to disclose to Plaintiff that Defendant had entered into a three year lease term of the premises with the actual owner, with an option to purchase the premises, for the total purchase price of Thirteen Million Five Hundred Thousand Dollars ($13,500,000.00) if exercised between December 15, 2013 – April 14, 2016, and

e) Misrepresenting to Plaintiff that Defendant would return to Plaintiff all construction monies Plaintiff would spend to renovate the concession space.

24.    The foregoing breaches of the terms of the agreement by Defendant deprived Plaintiff of the possibility of attaining the benefit of the bargain for which Plaintiff contracted.

25.    Plaintiff was induced to enter into the parties' agreement by Defendant's affirmative acts of fraud and misrepresentation, upon which Plaintiff justifiably relied. Plaintiff was also induced to enter into the agreement due to mistakes regarding  material parts of the subject matter of the contract, which were caused by the Defendant's concealment and non-disclosure. As a direct result,

there was a failure of consideration – all sufficient grounds for rescission of the agreement by Plaintiff.

26.     Upon discovery by Plaintiff of Defendant's breach, Plaintiff tendered possession and control of the concession space to Defendant.

27.     Plaintiff fully performed all of its contractual obligations under the agreement until the time of Plaintiff's discovery of Defendant's breach.

28.     Rescission is an appropriate remedy in these circumstances, as the parties can be placed back into their original positions, and the status quo can be restored, upon the Defendant's return to Plaintiff of all monies wrongfully obtained by Defendant, and upon Defendant's payment to Plaintiff of all other damages properly allowable by law.

29.     Plaintiff has sustained, and hereby asserts its right, to the following items of damages from Defendant:

   a) Actual damages pursuant to the parties' agreement in the amount of $300,000.00 paid by Plaintiff to Defendant,

   b) Actual damages in the amount of $86,470.75 for construction supplies and wages paid to contractors,

   c) Actual damages for furniture, kitchen appliances, restaurant and other equipment purchased by Plaintiff, and

   d) Damages in quantum meruit for the value of Plaintiff's time and services from April 15, 2013 through June, 2013.

## Count II
## Unjust Enrichment

30.     The allegations of paragraphs #1-29 of Plaintiff's Complaint are fully incorporated herein by reference thereto.

31.     The April 15, 2012 Management Agreement between the parties is void and unenforceable due to  mistakes regarding material parts of the subject matter of the contract, which were caused by the Defendant's concealment and nondisclosure.

32.     Plaintiff contracted with Defendant to provide a service, but the contract was terminated prematurely due to the Defendant's material breaches.

33.     The material breaches of the  parties' agreement, caused by the Defendant's concealment and nondisclosure, and the Defendant's affirmative acts of fraud and misrepresentation, resulted  in  the  Defendant's  unjust  enrichment  at  the  expense  of  the  Plaintiff.

34.     The Plaintiff unjustly received no compensation for the services Plaintiff rendered in renovating the concession space up until the time of Plaintiff's discovery of Defendant's breaches.

35.     It would be unconscionable for Defendant to retain the monies it received from Plaintiff pursuant to the agreement, for Defendant to retain the value of construction supplies and wages paid to contractors for the renovation of the concession area by Plaintiff,  for Defendant to retain the furniture, kitchen appliances, restaurant and other equipment purchased by Plaintiff, and for Plaintiff not to

receive the reasonable value of Plaintiff's time and services in quantum meruit from April 15, 2013 to June 2013.

36.     Equity and good conscious demand that Defendant make restitution to Plaintiff for the items of damages claimed by Plaintiff herein.

## Count III
## Fraud and Misrepresentation

37.     The allegations of paragraphs #1-36 of Plaintiff's Complaint are fully incorporated herein by referenced thereto.

38.     By and through its authorized agents, Defendant made a series of representations to Plaintiff which were material to the parties' April 15, 2013 "Management Agreement."

39.     Defendant's agents  Paul Liang and Chuan Jian Zhang made verbal representations to Plaintiff which were material to the parties' Management Agreement which included, inter alia, that:

   a) Liang was the Owner of a hotel and resort with a water park (The "Fort Rapids Water Park" in Columbus, Ohio) for which he had paid over Ten Million Dollars ($10,000,000.00),

   b) The level of business at the resort during the arranged visits with Plaintiff's agents was representative of the normal level of business at the resort when, in fact, business during the last week of March, 2013, was not representative of normal business, but rather, was unusually busy because it was spring break, and

   c) The March, 2013 sales report Defendant provided to Plaintiff showing gross sales of over One Hundred Thousand Dollars ($100,000.00) (attached hereto marked Exhibit "D"), represented sales for the existing restaurant and bar when, in fact, the report included sales from other concessions in the resort which had nothing to do with the part of the business Plaintiff contracted for.

11

40.     The Defendant, by and through its authorized agents, made written representations

which were material to the parties' April 15, 2013 "Management Agreement" which included, inter

alia, that:

a)  Defendant was the Owner of The Fort Rapids Water Park which included a restaurant
    facility inside the park,

b)  Defendant was granting exclusive possession and control of the concession space to be
    leased and managed by Plaintiff for a ten (10) year term from April 15, 2013-April 14,
    2023, and

c)  Defendant as Owner agreed to rebate to Plaintiff one hundred percent (100%) of the
    construction costs paid by Plaintiff to renovate the concession space by the end of the
    third year of operations.

41.     The Defendant, by and through its authorized agents, suppressed, concealed, and

intentionally failed to disclose facts which were material to the parties' Management Agreement,

which included, inter alia, that:

a)  Brownlee Reagan was the owner of The Fort Rapids Indoor Water Park Resort,

b)  Defendant had entered into a three (3) year lease term of the premises with the actual
    owner, Brownlee Reagan, for the period April 15, 2013-April 14, 2016,

c)  Defendant in its lease agreement with Brownlee Reagan had an option to purchase the
    premises for the total purchase price of $13.5 Million Dollars ($13,500,000.00) if
    exercised between December 15, 2013-April 14, 2016,

d)  Defendant had substantial financial obligations pursuant to its lease agreement with
    Brownlee Reagan which included a security deposit of Three Hundred Thirty Thousand
    Dollars ($330,000.00), the investment of Six Hundred and Seventy Thousand Dollars
    ($670,000.00) for direct operational costs, a rental payment of Fifty Five Thousand
    Dollars ($55,000.00) per month, and the payment of at least One Million Dollars
    ($1,000,000.00) for advertising during calendar years 2013 and 2014,

e)  Were Defendant to default in the payment of any of the foregoing financial obligations
    for a period of more than 15 days after the owner provided written notice, the Owner

12

would have the right to terminate Defendant's lease,

f) Defendant did not have the legal right or standing to enter into a ten (10) year term for the lease and management of the main concession area with Plaintiff,

g) Plaintiff was in fact obtaining only a three (3) year sublease of the concession space, and Plaintiff's lease and management of the concession space beyond that three (3) year term was contingent upon the Defendant's valid exercise of its option to purchase the premises for $13.5 Million Dollars ($13,500,000.00) by April 14, 2016, and contingent upon Defendant not committing any acts of default which would provide the owner of the premises with the right to terminate Defendant's lease,

h) Defendant did not allow Plaintiff to visit the resort during the week, so that Plaintiff would continue to believe that the level of business at the resort was as represented by Defendant,

i) Defendant had instructed its upper management employees not to speak with Plaintiff, nor to supply any sales report information to Plaintiff, and

j) Defendant inflated the costs of equipment and appliances, as well as the amount of electrical and plumbing permits and fees.

42.     The foregoing nondisclosures of material facts by Defendant were not privileged, and were fraudulent.

43.     The foregoing verbal and written representations, and the suppression, concealment, and nondisclosure of facts which were material to the parties' agreement were done falsely, with knowledge of their falsity or recklessness as to whether they were true or false.

44.     The foregoing misrepresentations of material facts and suppression or concealment of material facts were done consciously by Defendant, with the intent of misleading Plaintiff into relying upon the misrepresentations.

13

45.      Plaintiff justifiably relied upon the Defendant's misrepresentations of material facts and upon material facts which were suppressed or concealed by Defendant, and thereby sustained the injuries and damages claimed, which were proximately caused by their justifiable reliance.

46.      Defendant, by and through its authorized agents, committed the foregoing misrepresentations of material facts and concealment of material facts maliciously, with the specific intent to defraud Plaintiff out of large sums of money.  Defendant gained Plaintiff's trust and confidence, and convinced Plaintiff of the deal's great potential.

47.      Defendant's actions were outrageous, malicious, and were done with a wholly wanton disregard of the rights of Plaintiff, justifying an award of punitive damages in addition to the foregoing items of claimed damages.

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor, and against Defendant Fortune Group Hospitality, LLC.

Respectfully submitted,

By:

Joseph R. Bock, Esq.
PA ID #35729
100 VIP Drive, Suite 210
Wexford, PA 15090
(724) 934-9300
Attorney for Plaintiff

14