| | |
|---|---|
| Purchase Price | $13,500,000.00 |
| Seller to Pay RE taxes thru 12/31/2013 | $110,000.00 |
| Seller Credit for Repairs and updates to property | $2,270,000.00 |
| Seller to pay all transfer taxes | $270,000.00 |
| Dollars required to prepare property for tenant | $1,500,000.00 |
| Sales Commission | $1,350,000.00 |
| Total Closing Costs | $5,500,000.00 |
| Net to Seller | $8,000,000.00 |



EXHIBIT B

# LEASE AGREEMENT WITH OPTION TO PURCHASE

**THIS LEASE AGREEMENT** WITH OPTION TO PURCHASE (the "Lease") is made and entered into as of the 14th day of March, 2013 (the "Execution Date"), by and among **Brownlee Reagan**, an individual, who has a mailing address of P.O. Box 11, Gatlinburg, Tennessee 37738 ("Reagan"), ("Lessor"), and **Fortune Group Hospitality, LLC**, an Ohio limited liability company, or its assigns pursuant to **Section 7.1** below, which has a mailing address of 1100 Liberty Avenue, Suite C-3, The Pennsylvanian, Pittsburgh, Pennsylvania 15222 (the "Lessee").

## WITNESSETH:

**WHEREAS**, Lessor is the owner of certain improved real property located in Franklin County, Ohio, commonly known as Fort Rapids Indoor Water Park Resort and having an address of 4560 Hilton Corporate Drive Columbus, Ohio 43232, and as more particularly described on **Exhibit A** attached hereto and incorporated by reference (the "Real Property"), along with all the personal property, fixtures, equipment and all other assets in and on the real property, but excluding the Inventory described below (the "Equipment") (collectively, the Real Property and Equipment shall be referred to hereinafter as the "Property" or the "Leased Premises"); and

**WHEREAS**, Lessee desires to lease the Leased Premises to continue to operate the business on the Leased Premises under the terms and conditions contained herein; and

**WHEREAS**, Lessor desires to assign to Lessee its advance hotel reservations and provide a credit to Lessee for Lessor's reservation deposits, and Lessee desires to accept such assignment; and

**WHEREAS**, Lessee desires to purchase from Lessor on the Execution Date the food and beverage inventory, merchandise inventory, any gift shop inventory, and any other inventory or supplies needed to operate a hotel/waterpark/restaurant facility of Lessor.

**NOW, THEREFORE**, for and in consideration of the premises and the covenants and agreements herein contained and for Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby mutually covenant and agree as follows:

## SECTION 1
## DEMISE, TERM, RENT AND TRANSFERS OF PROPERTY

**1.1. Demise and Term.** Lessor does hereby lease and demise unto Lessee, and Lessee does hereby lease and hire from Lessor, the Leased Premises for a term of three (3) years, commencing as of April 15, 2013 (the "Commencement Date"), and terminating at 11:59 p.m. (EST) on April 14, 2016 (the "Termination Date"), unless sooner terminated or extended as herein provided (the "Term"). Notwithstanding the foregoing, in the event Lessee exercises the Option (as hereinafter defined) to purchase the Leased Premises during the Term but is prohibited from exercising the Option because of Lessor's inability to convey fee simple title in the Leased Premises to Lessee, then the Term shall be extended until Lessor is legally able to convey fee simple title in the Leased Premises to Lessee.

737012.13

1.2. **Rent.** Commencing on the Commencement Date, and during the Term, Lessee covenants and agrees to pay to Lessor as rent for the Leased Premises the sum of Fifty-Five Thousand Dollars ($55,000) per month (the "Rent"). All such rent shall be payable on the first day of each month of the Term. The April 15, 2013 Rent is due on or before March 15, 2013. Lessee acknowledges that the March 15, 2013 Rent is nonrefundable in the event Lessee does not take possession of the Premises and comply with the other terms and conditions of this Lease. Lessor acknowledges a $10,000.00 nonrefundable deposit which will be applied to the April 15, 2013 Rent leaving a balance due and owing of $45,000.00. If the April 15, 2013 Rent is not received on or before March 15, 2013, this Lease will be deemed null and void and Lessor may retain the $10,000.00 deposit as liquidated damages.

1.3. **Additional Rent.** All taxes, charges, costs and expenses which Lessee is required to pay under this Lease, together with all interest and penalties that may accrue thereon in the event of Lessee's failure to pay such amounts, and all damages, costs and expenses which Lessor may incur by reason of any default of Lessee or failure on Lessee's part to comply with the Term of this Lease, shall be deemed to be additional rent hereunder (hereinafter called the "Additional Rent"). In the event of any nonpayment of Additional Rent by Lessee, Lessor shall have all the rights and remedies with respect thereto as Lessor has for the nonpayment of the above specified monthly rentals.

1.4. **No Offsets.** All rents shall be paid to Lessor without demand and without set-off at the offices of Lessor specified herein, or at such other address as Lessor may from time to time designate to Lessee by notice in the manner hereinafter provided.

1.5. **Triple Net Lease.** Except as may otherwise be specifically provided in this Lease, it is the intention of Lessor and Lessee that the rent herein specified shall be completely net to Lessor in each year during the Term of this Lease, that all costs, expenses and obligations of every kind relating to the Leased Premises which may arise or become due during the Term of this Lease shall be paid by Lessee, and that Lessor shall be indemnified by Lessee against such costs, expenses and obligations, provided, however, that Lessee shall be under no obligation to pay interest on any mortgage on the fee of the leased property, any franchise or income tax payable by Lessor, or any gift, inheritance, transfer, estate or succession tax by reason of any present or future law which may be enacted during the Term of this Lease. This Lease shall be liberally construed in favor of Lessor to give effect to the above intention of the parties that this shall be an absolutely "triple net lease."

1.6. **Security Deposit.** Lessee shall deposit with Lessor the sum of Three Hundred Thirty Thousand Dollars ($330,000.00) (the "Security Deposit") to secure the Lessee's full and faithful performance of all of its obligations under this Lease, including, but not limited to the timely payment of all installments of Rent, as well as to secure Lessor against any damage which may result to the Premises caused by the Lessee, Lessee's invitees or other authorized occupants of the Premises during the term of this Lease. The Security Deposit is to be paid to Lessor on or before April 15, 2013. The Security Deposit shall be refunded to the Lessee only if all rental installments have been paid, and only if the Premises and the Equipment are found, upon inspection at the end of the Term, to be in good and clean condition with no damage, ordinary wear and tear accepted. If Lessee exercises its option to purchase as set forth in **Section 14.2**, and closes the transaction as set forth in **Section 14.3**, the Security Deposit shall be applied to the

Purchase Price set forth in **Section 14.3(b)**. Termination of the Lease for any event of Default as defined hereunder shall result in Lessee's forfeiture of the Security Deposit. If Lessee shall fail to exercise its option to purchase as set forth in **Section 14.2** on or before November 1, 2015, Lessor shall deposit the Security Deposit of $330,000.00 in an escrow account for the benefit of Lessee, or shall credit said $330,000.00 to the last six monthly installments of rent at Lessee's discretion.

1.7.   **Operating Deposit.** Lessee agrees to invest a further $670,000.00 into an escrow account that will be spent on direct operational costs including, but not limited to, repairs, maintenance, and upgrades to the Real Property. Said funds will be deposited in the Escrow Account on or before April 15, 2013. The operating deposit shall be placed in a bank account chosen by Lessee. However, Lessor shall have online access to the account at all times to review balances and expenses paid from the account. Prior to withdrawal of any funds from the account, Lessee shall give Lessor at least 24 hours notice of any expenditure for repair, maintenance or upgrades to the Real Property. In the event any of the operating deposit is not spent upon the expiration of the term or the exercise of the option (as defined below), any balance remaining shall be the property of Lessee.

1.8.   **Advertising for the Leased Premises.** Lessee shall, as part of its obligations under this Lease, invest at least One Million Dollars ($1,000,000), in advertising (the "Advertising Budget") the Leased Premises during calendar years 2013 and 2014. Lessee shall provide to Lessor, on a monthly basis, documentation of expenditures from the advertising budget.

1.9.   **Assignment of Reservations.** Lessor hereby assigns to Lessee all advance hotel reservations and will credit to Lessee, as a deduction against the price of the Inventory (as hereinafter defined), any reservation deposits received by Lessor prior to the Commencement Date of this Lease. Lessee agrees and accepts said assignment.

1.10.  **Sale of Inventory.** Lessor shall sell, transfer and assign to Lessee all of Lessor's food and beverage inventory, merchandise for sale, gift shop inventory, and other items of inventory listed on **Exhibit B** (the "Inventory") at the book value of the Inventory as recorded in Lessor's books. Lessee shall pay to Lessor on the Execution Date the total sum of the book value of the Inventory (the "Inventory Purchase Price") in cash or other readily available funds. Upon payment to Lessor of the Inventory Purchase Price, Lessor shall execute a Bill of Sale transferring the Inventory to Lessee in substantially the form attached as **Exhibit C**.

## SECTION 2
## COVENANTS AND WARRANTIES OF LESSOR

2.1.   **Estate of Lessor.** Lessor represents and warrants to Lessee that they have full right and lawful authority to enter into this Lease; that the Leased Premises are free and clear of all liens, exceptions, restrictions and encumbrances except those which are of record in the Recorder's Office for Franklin County, Ohio; and that Lessor will defend the title to the Leased Premises against the claims of all persons whomsoever.

2.2. **Quiet Possession.** Lessor covenants that Lessee, upon performing and observing the covenants to be observed and performed by Lessee under this Lease, shall peaceably hold, occupy and enjoy the Leased Premises during the Term of this Lease without interference by Lessor or by any other person claiming by, through or under Lessor.

## SECTION 3
## TAXES, ASSESSMENTS, CHARGES
## COMPLIANCE WITH LAW, AND LIENS

3.1. **Taxes, Assessments and Other Charges.** Lessee covenants and agrees to pay and discharge as Additional Rent hereunder, before delinquent, all taxes, utility payments, assessments, water rents, sewer rentals, levies or other charges, general, special, ordinary, extraordinary and otherwise, of every kind and character which are, or may, during the Term hereby created, be levied, charged, assessed or imposed upon or against the Leased Premises or any improvements which are now, or may be, placed thereon, or any of Lessee's personal property located thereon, or which may be levied or imposed upon the leasehold estate hereby created, and will upon written request of Lessor deliver to Lessor all receipts, or duplicates thereof, within fifteen (15) days after payment evidenced thereby, and will at all times save Lessor harmless from the payment of all such amounts payable in respect of the Leased Premises or the improvements thereon, or the use and occupancy thereof. It is agreed and understood that Lessee shall remain liable for all such payments of Additional Rent whether or not it shall impose upon any sublessee the duty to assume all or a portion of any amount specified in this subsection.

3.2. **Taxes.** Anything herein to the contrary notwithstanding, Lessee shall not be required to pay any franchise, excise, or income tax of Lessor. If, at any time during the Term hereof, under the laws of the United States or the State of Ohio or political subdivision thereof in which the Leased Premises are situated, a tax on rent or other charge by whatever name called, is levied, assessed or imposed against Lessor or the rent payable hereunder to Lessor as a substitute in whole or in part for the tax on real estate, Lessee, to the extent that such substitute tax or other charge relieves Lessee from the payments hereinbefore provided in **Section 3.1** above, shall pay such tax or other charge as soon as the same becomes due and payable.

3.3. **Lessor's Rights Upon Nonpayment.** Lessor shall have the right after delinquency at all times during the Term hereof to pay any taxes, assessments, water rents, levies, interest or other charges upon the Leased Premises, and to pay, cancel and clear all tax sales, liens, charges and claims upon or against the Leased Premises or any improvements that are now, or may be, placed thereon, and to redeem said Leased Premises from the same, or any of them, from time to time, without being obligated to inquire as to the validity of the same. Any sums so paid by Lessor shall become Additional Rent due and payable by Lessee on the next day after such payment by Lessor, together with interest at the rate of fifteen percent (15%) per annum from such date to the day of payment thereof by Lessee to Lessor.

3.4. **Compliance with Laws.** Lessee, at its sole cost and expense, shall comply with and cause the Leased Premises to comply with all applicable federal, state, county and municipal laws, rules, orders, regulations and ordinances affecting the Leased Premises (all or any one of which are herein referred to as "Regulations"). Lessee shall fully indemnify and hold Lessor harmless from any liability, damage, cost or expense that Lessor might otherwise suffer from

737012.13

4

Lessee's failure to fully comply with this provision. This indemnity shall survive expiration or other termination of this Lease.

3.5. **Liens.** In the event Lessee makes any improvements to portions of the Leased Premises pursuant to **Section 5.1** hereof or Repairs pursuant to **Section 1.7** hereof, Lessee shall not permit any liens to attach to Lessor's interest in the Premises. If any mechanics lien or other lien or order for the payment of money shall be filed against the Leased Premises or building(s) or improvements thereon by reason of, or arising out of, any labor or material furnished or alleged to have been furnished to or for Lessee at the Leased Premises, or for or by reason of any change, alteration or addition by the Lessee, or the cost or expense thereof or any contract relating thereto, or against Lessor, then Lessee shall within thirty (30) days after the filing of any such lien cause the same to be canceled and discharged of record, by bond or otherwise, at the election and expense of Lessee, and shall defend on behalf of Lessor, at Lessee's sole cost and expense, any action, suit or proceeding which may be brought thereon or for the enforcement of such lien, liens or orders, and Lessee shall pay any damages and discharge any judgment entered thereon and shall indemnify and save harmless Lessor from any claim or damage resulting therefrom. If Lessee fails to keep this covenant, in addition to any other remedies available to Lessor under this Lease or otherwise, Lessor may at its option discharge such lien, in which event Lessee agrees to pay Lessor, on demand, a sum equal to one hundred fifteen percent (115%) of the amount of the lien thus discharged by Lessor plus Lessor's attorney's fees.

3.6. **Permitted Contests.** Lessee, at its expense, may contest (by appropriate legal proceedings conducted in good faith and with due diligence) the amount, validity or application, in whole or part, of any tax or charge referred to in **Sections 3.1** or **3.2** hereof, or any Regulation referred to in **Section 3.4** hereof, provided that Lessee shall give Lessor prior written notice of such contest and Lessee shall have deposited with Lessor or the taxing authorities a surety company bond in such sum and upon such conditions as will assure payment, upon termination of such proceedings, of the amount of taxes so contested and unpaid, together with all interest and penalties in connection therewith and all charges that may or might be assessed against or become a charge on the Leased Premises in said proceedings. Upon the termination of such proceedings, Lessee shall deliver to Lessor proof of the amount of the imposition as finally determined in such proceedings. Lessor on behalf of Lessee and at Lessee's sole expense, shall join in any such proceedings and shall cooperate with Lessee to the end that such proceedings may be brought to a successful conclusion. Lessee shall be entitled to any refund of any such tax and penalties or interest thereon which shall have been paid by Lessee. Lessee shall indemnify and save harmless Lessor from responsibility, financial or otherwise, arising out of any such proceedings.

### SECTION 4
### USE AND SURRENDER OF THE LEASED PREMISES; USE AND REPLACEMENT OF EQUIPMENT; SIGNS; UTILITIES

4.1. **Use of the Leased Premises.** Lessee may use the Leased Premises solely and exclusively in accordance with its existing operations as a water park, hotel, conference center, restaurant and destination resort, and for no other purpose whatsoever without Lessor's prior written consent, which consent may be withheld, conditioned or delayed in Lessor's sole and

737012.13

5

absolute discretion. In no event shall Lessee operate the Leased Premises in such a way as to constitute a public or private nuisance or violate any applicable law, ordinance or regulation.

4.2. **Use, Repair and Replacement of Equipment and Other Personal Property.** Lessee will maintain the Equipment and any other personal property owned by Lessee in good working condition during the Term of the Lease, ordinary wear and tear excepted. Lessee shall be responsible for replacing, with its own funds, any Equipment or other personal property that is exhausted, damaged beyond repair or discarded during the Term or any holdover period.

4.3. **Signs.** Any signs erected on the Leased Premises must conform to the general architectural scheme of the Leased Premises and any related property owned by Lessor. The design and location of any such signs must be approved by Lessor prior to the installation thereof, which approval shall not be unreasonably withheld or delayed.

4.4. **Surrender of Leased Premises.**

(a) It is agreed that at the termination of this Lease, Lessee may not remove any movable personal property or trade fixtures that Lessee has placed in the Leased Premises. Lessor shall make an inventory of all Equipment at the termination of the Lease. In the event any Equipment is missing, exhausted, damaged beyond repair or otherwise discarded (the "Damaged Equipment"), Lessee shall be responsible for replacing the Damaged Equipment by remitting the necessary funds to Lessor for Lessor to replace the Damaged Equipment. Lessor and Lessee shall be responsible for determining the replacement cost of the Damaged Equipment as determined by good faith negotiations between the parties.

(b) Lessee covenants and agrees, at the expiration or earlier termination of this Lease, whether by limitation, forfeiture or otherwise, to quit, surrender and deliver to Lessor possession of the Leased Premises with all the improvements thereon free from all liens thereon, in good condition and repair, ordinary wear and tear excepted, all of which shall become and remain the property of Lessor. Lessee's obligations to observe or perform this covenant shall survive the expiration or other termination of the Term of this Lease. If Lessee shall default in so surrendering the Leased Premises, Lessee's occupancy subsequent to such expiration or termination, whether or not with the consent or acquiescence of Lessor, shall be deemed to be a tenancy-at-will and in no event for month-to-month or year-to-year and it shall be subject to all the terms, covenants and conditions of this Lease applicable thereto, and no extension or renewal of this Lease shall be deemed to have occurred by such holding over.

4.5. **Utilities.** Lessor shall not be required to furnish Lessee any facilities or services of any kind, such as, but not limited to, water, steam, sewer, heat, gas, hot and/or chilled water, electricity, lighting or air conditioning.

## SECTION 5
## CONSTRUCTION OF IMPROVEMENTS, REPAIRS, ALTERATIONS AND INSPECTIONS DURING THE TERM

5.1. **Construction of Improvements.** In the event Lessee desires to make any improvements to the Leased Premises other than Repairs as provided in **Section 1.7**, Lessee shall be allowed to do so only after receiving the specific written consent of Lessor to such

improvements both as to design and scope, which consent shall not be unreasonably withheld or delayed. Lessee covenants and agrees with Lessor that any and all such improvements (or at Lessor's option, less than all) made on any portion of the Leased Premises shall, at the conclusion of the Term hereof, become and remain the property of Lessor.

5.2. **Maintenance and Repair.** Lessee shall at Lessee's own cost and expense throughout the Term of this Lease, and so long as it shall remain in possession of the Leased Premises, keep and maintain in good repair, all portions thereof (except the main walls, roof, and structural portions of the Leased Premises, as hereinafter provided) including all fixtures, equipment (especially heating and air conditioning equipment), appurtenances and machinery therein which are brought into and become a part of the real estate, and all glass, including but not limited to plate glass, and windowpanes; furthermore, Lessee shall keep the plumbing, closets, pipes and fixtures belonging thereto in good repair to the satisfaction of Lessor and of the municipal and any other governmental authorities during the Term of this Lease.

5.3. **Risk of Loss.** All property of every kind which may be on the Leased Premises during the Term hereof shall be at the sole risk of Lessee or those claiming under Lessee and Lessor shall not be liable to Lessee or to any other person whomsoever for any injury, loss or damage to any such property in or upon said Leased Premises, and the entrances, sidewalks and walkways adjoining same.

5.4. **Lessee's Duties with Reference to Roofs, Main Walls and Structural Portions of Leased Premises.** Anything herein contained to the contrary notwithstanding, Lessee covenants and agrees to maintain the roof of the building on the Leased Premises, the main walls thereof and the other structural portions of the Leased Premises, in good repair. Lessor shall not be liable to Lessee or Lessee's agents, employees and invitees for any damages resulting from failure to maintain same.

5.5. **Inspection by Lessor.** Lessor and Lessor's agents shall have the right to enter the Leased Premises at all reasonable hours upon reasonable prior notice for the purpose of (i) inspecting same; (ii) performing obligations of Lessor under this Lease; (iii) performing obligations of the Lessee hereunder in which the Lessee may neglect or refuse to perform; (iv) showing the Leased Premises to persons wishing to purchase Lessor's interest therein during the twelve (12) months prior to the expiration of the Lease; and (v) showing the Leased Premises to prospective tenants or purchasers during the twelve (12) months prior to the expiration of the Lease if Lessee does not exercise the Option. The provisions contained in this **Section 5.5** shall not impose on Lessor any of Lessee's obligations under this Lease, nor shall it create any liability of Lessor by virtue of Lessor's having inspected the Leased Premises.

## SECTION 6
## INSURANCE

6.1. **Classes of Insurance.** Lessee, during the Term of this Lease, shall keep the Leased Premises insured against the risks and hazards and with the coverage in amounts not less than those specified as follows:

(a) Insurance Services Offices ("ISO") Commercial General Liability Coverage on the Premises, including comprehensive automotive liability coverage, in an amount not less than Ten Million Dollars ($10,000,000.00) combined single limit each occurrence for bodily injury and property damage;

(b) ISO Special Form Insurance in an amount equal to the full replacement costs of the value of and all improvements and betterments in the Leased Premises and in an amount to prevent Lessor or Lessee from becoming a co-insurer of any partial loss under the applicable policy, and flood insurance (if required by any mortgagee, or governmental authority;

(c) Worker's compensation insurance covering all persons employed in connection with any work performed by Lessee or any repair or alteration authorized by this Lease or consented to by Lessor, and all employees and agents of Lessee with respect to whom death or bodily injury claims could be asserted against Lessor or Lessee as required by applicable law. Before undertaking any alteration, additions, improvements or construction, Lessee shall obtain at its expense a public liability insurance policy insuring Lessee and Lessor against any liability that may arise on account of such proposed alterations, additions, improvements or construction, on an occurrence basis with minimum limits as set forth above; and

(d) During the time the any improvements are being constructed, a standard form Builder's Risk Policy on a replacement Cost basis, with an "all risk" endorsement, a course of construction endorsement, and with a collapse provision, in an amount approved by Lessor, with loss payable to Lessee.

6.2. **Requirements.** All of the aforesaid insurance shall be written in the name of Lessor (and any designee(s) of Lessor) and Lessee and shall be written by one or more responsible insurance companies with a Bests Insurance Guide rating of A+ authorized to do business in Ohio; all such insurance shall contain endorsements that: such insurance may not be canceled or amended with respect to Lessor (or its designee) except upon thirty (30) days' prior written notice to Lessor (or such designee) by the insurance company. Lessee shall be solely responsible for the payment of the premiums therefor and Lessor (or its designee) shall not be required to pay any premium for such insurance. The minimum limits of comprehensive general liability policy of insurance shall in no way limit or diminish Lessee's liability hereunder. Lessee shall deliver to Lessor at least fifteen (15) days prior to the expiration of such policy, either a duplicate original or a certificate of insurance on all policies secured by Lessee in compliance with its obligations hereunder, together with evidence satisfactory to Lessor of the payment of the premiums therefor. If Lessee fails to obtain and provide any or all of the aforesaid insurance, then Lessor may, but shall not be required to, purchase such insurance on behalf of Lessee and add the costs of such insurance as Additional Rent due under this Lease.

## SECTION 7
## ASSIGNMENT, SUBLETTING, MORTGAGING

7.1. **Assignments and Subleases.** Lessee shall not assign this Lease without the prior written consent of Lessor, which consent shall not be unreasonably withheld or delayed. Lessee shall have the right and power, at any time or from time to time, to sublease a portion, but not all,

of the Leased Premises without the prior written consent of Lessor. Upon any assignment or sublease, Lessee shall not be relieved of its obligations under this Lease.

7.2.  **Mortgaging.**  Lessee may mortgage or otherwise encumber its interest in the Leased Premises or the improvements thereon only upon the prior written consent of Lessor, which consent shall not be unreasonably withheld or delayed.

## SECTION 8
## DEFAULT

8.1.  **Events of Default.**  The occurrence of any of the following acts or events, shall constitute events of default under this Lease (herein referred to as "Default"):

(a) Lessee fails to make any payment required hereunder when due and such failure continues for a period of fifteen (15) days after Lessor shall have given Lessee written notice thereof and specifying the nature of such failure;

(b) Lessee fails to fulfill or perform any of Lessee's covenants (other than the payment of rent which is specified in **Section 8.1(a)**), agreements or obligations under this Lease and such failure continues for a period of thirty (30) days after Lessor shall have given Lessee written notice thereof and specifying the nature of such failure;

(c) If at any time during the Term herein there shall be filed by or against Lessee, or against any successor lessee then in possession, in any court pursuant to any petition in bankruptcy, alleging an insolvency, for reorganization, for the appointment of a receiver, or for an arrangement under the Bankruptcy Code, or if a similar type of proceeding shall be filed, which remains unstayed or unbonded for a period of ninety (90) days;

(d) If Lessee shall abandon the Leased Premises for a period of thirty (30) or more days; or

(e) If this Lease or the estate of Lessee hereunder shall be transferred or passed to or devolve upon any other person, firm, association or corporation, except with Lessor's consent; or

(f) If Lessee causes an Event of Default (as that term is defined in the Management Agreement) under the terms of the Management Agreement.

8.2.  **Rights of Lessor Upon Default.**  Upon the occurrence of any Default hereunder, Lessor shall have the right, at its option, to give Lessee written notice of the termination of this Lease as of the date of such written notice or such date as may be specified in such notice of termination. On such termination date, this Lease and the Term hereby granted and created, as well as all of the right, title and interest of Lessee hereunder (without further action on Lessor's part or those claiming under Lessor) shall wholly cease and expire, in the same manner and with the same force and effect as if the expiration of time in such notice were the end of the Term herein originally demised. Lessor or those claiming under Lessor may immediately or at any time thereafter, and without further notice or demand, enter into and upon the Leased Premises or any part thereof, and repossess the same as of Lessor's first and former estate, and expel

Lessee and those claiming under Lessee and remove Lessee's effects (forcibly, if necessary) or take said effects under the landlord's lien herein granted, without being taken or deemed guilty of any manner of trespass and without prejudice to any remedies that might otherwise be used for arrears of rent or breach of contracts. Lessee agrees that, notwithstanding the termination of the Lease and the possession regained by Lessor, it will indemnify Lessor against all loss of rent which Lessor may suffer by reason of such termination, during the remainder of the Term hereof, as well as all other damages to which Lessor may be entitled. It is especially agreed and understood that Lessor may retain all advance rentals or deposits in Lessor's possession as and for damages to apply against rentals to accrue during the remainder of the Term hereof and any other damages.

8.3. **Additional Remedies**. Upon the occurrence of any Default hereunder, Lessor shall have, in addition to any other remedies which it may have hereunder, the right to invoke any remedy allowed at law or in equity to enforce Lessor's rights or any of them, as if reentry and other remedies were not herein provided for, including, without limitation, the right to elect not to terminate this Lease and require Lessee to cure any default hereunder.

8.4. **Acceptance of Rent**. In the event Lessor does not exercise the rights of reentry hereinabove given Lessor, Lessor may accept rent from any receiver, trustee, or other officer in possession thereof, for the term of such occupancy without impairing or affecting in any way the rights of Lessor against Lessee hereunder or his right to such advance rentals or deposit.

8.5. **No Waiver**. Any neglect or failure to enforce the right of forfeiture of this Lease or reentry upon the breach of any of the conditions, covenants, terms and agreements herein contained, shall not be deemed a waiver of such right upon any continuing or subsequent breach of any such or any other condition, covenant, term and/or agreement herein contained.

8.6. **Attorney's Fees**. If Lessor shall deem it necessary to engage attorneys to enforce its rights hereunder, with the determination of such necessity to be in the sole discretion of Lessor, Lessee will reimburse Lessor for the reasonable costs and expenses incurred thereby, including but not limited to court costs and attorneys' fees.

## SECTION 9
## SUBORDINATION AND ESTOPPEL CERTIFICATE

9.1. **Subordination, Non-Disturbance and Attornment**. Lessor agrees to obtain from the first mortgage holder on the Property, Reagan Ohio Mortgage, LLC, a Subordination, Non-Disturbance and Attornment Agreement which provides that in the event of any foreclosure, sale under power of sale, or transfer in lieu of any of the foregoing pursuant to the first mortgage, Lessee's use, possession and enjoyment of the Leased Premises will not be disturbed and this Lease will continue in full force and effect so long as the Lease is not in default under this Lease beyond any applicable cure periods. In consideration for said Subordination, Non-Disturbance and Attornment Agreement, Lessee agrees that it will not contest any foreclosure sale, and will not bid or otherwise participate in the foreclosure sale of the Real Property.

9.2. **Estoppel Certificate**. Lessor and Lessee agree that Lessee will at any time and from time to time, but not more than twenty (20) days after written request by either of them to

the other, execute, acknowledge and deliver to the requesting party a statement in writing certifying that this Lease is unmodified and is in full force and effect (or if there have been such modifications, that the same is in full force and effect as modified, and stating the modification) and the date to which the rental and other changes have been paid in advance, it being intended that any such statement delivered pursuant to this **Section 9.2** may be relied upon by any prospective purchaser of the fee, mortgagee or assignee of any mortgage upon the fee or leasehold interest in the Leased Premises or by the assignee of the Lessee if such assignment is permitted by the Lessor as otherwise herein required.

## SECTION 10
## CONDEMNATION

10.1. **Taking.** Any taking during the Term of this Lease of any interest in the Leased Premises as a result of the actual exercise of the power of condemnation or eminent domain by the United States or any other body having such power or any sale or other transfer of any such interest in lieu of or in anticipation of the impending exercise of any such power, to any person legally empowered to exercise such power shall, for the purposes of this Lease, be herein referred to as a "Taking".

10.2. **Total Taking.** In the event all of the Leased Premises or such portion thereof as makes the residue of substantially no commercial value to Lessee (as determined by Lessor) is subject to a Taking, this Lease shall automatically terminate on the date that title to the Leased Premises or portion thereof vests in the condemning authority; provided, however, that the termination of this Lease shall not benefit the condemnor and shall be without prejudice to the rights of either Lessor or Lessee to recover just and adequate compensation from the condemning authority.

10.3. **Partial Taking.** In the event less than all of the Leased Premises is subject to a Taking and/or the residue after a Taking remains of substantial commercial value to Lessee (as determined by Lessor), this Lease shall not terminate, provided, however, that (i) the rent payable hereunder shall be equitably reduced by Lessor in proportion to the portion of the Leased Premises which has been subject to a Taking; and (ii) such continuing of this Lease shall be without prejudice to the rights of either Lessor or Lessee to recover just and adequate compensation from the condemning authority.

## SECTION 11
## DAMAGE OR DESTRUCTION

11.1. **Lessee to Give Notice.** In the event of any damage to or destruction of the Leased Premises or any improvements or any part thereof, Lessee will give written notice thereof to Lessor describing the nature and extent of such damage or destruction.

11.2. **Total Destruction.** In the event all of the Leased Premises or such portion thereof as makes the residue of substantially no commercial value to Lessee (as determined by Lessor) is destroyed by fire or other casualty ("Total Destruction"), (i) Lessee may promptly restore the Leased Premises as soon as reasonably possible to the condition of the same prior to such damage or destruction, in which event the rent payable hereunder shall abate until the

completion of said restoration, or (ii) Lessee may terminate this Lease without penalty. All insurance proceeds received by Lessor or Lessee pursuant to the provisions of this Lease, less the cost, if any, of the recovery of said proceeds, shall be applied to the payment for such restoration, if said restoration is elected by Lessee. Any balance of such proceeds thereafter remaining shall be payable to Lessor. If Lessee elects not to so restore the Leased Premises, then this Lease shall terminate as of the date of such damage or destruction. Lessee shall notify Lessor within sixty (60) days after the date of such damage or destruction of Lessee's election to restore or not to restore the Leased Premises.

**11.3. Partial Destruction.** In the event less than all of the Leased Premises is damaged or destroyed and/or the residue after damage or destruction of the Leased Premises remains of substantial commercial value to Lessee (as determined by Lessor), this Lease shall not terminate; provided, however, that Lessee shall promptly proceed to restore the portion of the Leased Premises which was damaged or destroyed as nearly as possible to its condition prior to such damage or destruction. All insurance proceeds received by Lessor or Lessee pursuant to provisions of this Lease, less the cost, if any, of the recovery of said proceeds shall be applied to the payment for such restoration and any balance thereafter remaining shall be paid to Lessor. The rent payable hereunder shall be equitably reduced by Lessor in proportion to the portion of the Leased Premises that has been damaged or destroyed until the completion of the renovation thereof.

## SECTION 12
## CONDITION OF LEASED PREMISES

Lessee accepts this Lease of the Leased Premises "as is" and further agrees that, in taking this Lease, it is governed by its own inspection of the Leased Premises and its own judgment, and has not been governed or influenced by any representation of Lessor as to condition and character of the Leased Premises; that no agreements, stipulations, reservations, exceptions or conditions whatsoever have been made or entered into in regard to the Leased Premises or this Lease, which will in any way vary, contradict or impair the validity of this Lease or of any of its terms and conditions as herein set forth, and that no modification of this Lease shall be binding unless it be in writing and executed by all the parties hereto. Furthermore, Lessee takes this Lease on the Leased Premises subject to all statutes, ordinances and regulations of competent governmental authority affecting the occupancy and use thereof, the construction and maintenance of improvements thereof, and the business and occupations to be engaged in by Lessee, in force now or subsequently put in force during the Term of this Lease.

## SECTION 13
## WAIVER OF SUBROGATION; INDEMNIFICATION

**13.1. Waiver of Subrogation.** Lessor and Lessee hereby release the other from any and all liability or responsibility to the other or anyone claiming through or under them by way of subrogation or otherwise for any loss or damage to property caused by fire or any extended coverage or supplementary contract casualties, even if such fire or other casualty shall have been caused by the fault or negligence of the other party, or anyone for whom such party may be responsible, provided, however, that this release shall be applicable and in force and effect only with respect to loss or damage fully covered by insurance and occurring during such time as the

releasor's insurance policies shall contain a clause or endorsement to the effect that any such release shall not adversely affect or impair said policies or prejudice the right of the releasor to recover thereunder. Lessor and Lessee each agrees that they will request their insurance carriers to include in their policies such a clause or endorsement. If extra cost shall be charged therefor, each party shall advise the other thereof and of the amount of the extra cost, and the other party, at its election, may pay the same, but shall not be obligated to do so.

13.2. **Lessor Protected from Claims or Damages.** From and after the day hereof, Lessee covenants and agrees to defend and hold Lessor harmless against any and all claims, suits, damages or causes of action for damages, arising from and after the date hereof, and against any orders, decrees or judgments which may be entered in, as a result of any alleged injury to person and/or property or alleged loss of life sustained in or about the Leased Premises and the buildings and improvements thereon, if any, or upon the sidewalks, steps, railings, parking areas and approaches appurtenant thereto, by any person or persons whomsoever, except as such shall result from the willful acts of Lessor or from a breach of this Lease by Lessor.

13.3. **Lessee Protected from Claims or Damages.** Lessor covenants and agrees to defend and hold Lessee harmless against any and all claims, suits, damages or causes of action for damages, arising prior to the date hereof, and against any orders, decrees or judgments which may be entered in, as a result of any alleged injury to person and/or property or alleged loss of life sustained in or about the Leased Premises and the buildings and improvements thereon, if any, or upon the sidewalks, steps, railings, parking areas and approaches appurtenant thereto, by any person or persons whomsoever, arising prior to the date hereof.

13.4. **Title to Property.** Lessee agrees to cooperate to the fullest extent possible in settling ownership or title issues with the Leased Premises as long as such cooperation does not require any payment of fees or expenses by Lessee. Lessor agrees to defend and hold Lessee harmless against any and all claims, suits, damages or causes of action for damages, arising from any issues relating to the ownership or title of the Leased Premises that arose prior to the date hereof.

## SECTION 14
## PURCHASE OPTION

14.1. **Generally.** In consideration for the payment by Lessee to Lessor of the Rent hereunder and other good and valuable consideration, Lessor does hereby give and grant unto Lessee the right and option to purchase the Leased Premises under the terms hereinafter specified ("the "Option").

14.2. **Exercise of Option.** In the event Lessee wishes to exercise this Option, Lessee may give Lessor written notice of exercise at any time after December 15, 2013, either delivered by hand or sent to Lessor as herein provided. If Lessee fails to exercise this Option on or before the last day of the Term, as herein specified, said Option to purchase shall expire.

14.3. **Other Provisions.** In the event Lessee elects to exercise this Option, the following provisions shall apply:

737012.13

13

(a) The closing of the sale of the Leased Premises (the "Closing") shall be held within ninety (90) days after notice of exercise, or at such time as may be agreed by the parties, with the location and time of said Closing to be agreed upon by the parties.

(b) The total purchase price for the sale of the Leased Premises shall be Thirteen Million Five Hundred Thousand Dollars ($13,500,000.00) reduced by the Principal Payments shown on **Exhibit D**, and further reduced by the Purchase Price reductions contained on **Exhibit E** (the "Purchase Price").

(c) Lessee shall be entitled to a credit against the Purchase Price equal to a portion of the monthly Rent payments described on the amortization schedule attached as **Exhibit D** (the "Principal Payments").

(d) The Leased Premises shall be conveyed subject to real property taxes for the year in which the Closing occurs, which shall be apportioned between the parties at the Closing and assumed by Lessee.

(e) If there is a mortgage or deed of trust on the Premises, Lessor agrees to obtain at Lessor's expense and deliver to Lessee, on or before the Closing date, a release thereof, properly executed and acknowledged in form for recording.

(f) The deed by which the Leased Premises are conveyed to Lessee at the Closing shall be a general warranty deed in proper statutory form for recording, shall be duly executed and acknowledged by Lessor, and shall convey to Lessee fee simple title to the Leased Premises.

(g) Lessor shall pay the costs of deed preparation and one-half (½) of the closing agent's fee. Lessee shall pay the costs of recording the deed, the title insurance premium for an owner's policy, if any, and one-half (½) of the closing agent's fee. Each party shall pay its own attorney's fees.

(h) Lessor shall deliver to Lessee any other documents that may be reasonably required to carry out this Option.

(i) All commissions payable under this Agreement shall be paid to George Maier, d/b/a Christal-Maier Co., or Assignee. Lessee shall have no responsibility for payment of any real estate commission other than what is shown on **Exhibit E**, and only if Lessee exercises its option to purchase and pays the Purchase Price of $13,500,000.00 as stated herein.

## SECTION 15
## MISCELLANEOUS

**15.1. Waiver.** No waiver of any terms or provisions hereof shall be valid unless such waiver is in writing.

**15.2. Separability.** Each and every covenant and agreement contained in this Lease shall be for any and all purposes hereof construed as separate and independent and the breach of any covenant by Lessor shall not discharge or relieve Lessee from its obligation to perform each and every covenant and agreement to be performed by Lessee under this Lease. All rights,

powers and remedies provided herein may be exercised only to the extent that the exercise thereof does not violate applicable law and shall be limited to the extent necessary to render this Lease valid and enforceable. If any term, provision or covenant of this Lease or the application thereof to any person or circumstance shall be held to be invalid, illegal or unenforceable, the validity of the remainder of this Lease or the application of such term, provision or covenant to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby.

**15.3. Notices, Demands and Other Instruments.** All notices, demands, requests, consents and other instruments required or permitted to be given pursuant to the terms of this Lease shall be in writing and shall be deemed to have been properly given (i) upon personal delivery, (ii) upon deposit in the United States Mail, if sent by first class, registered or certified United States Mail, return receipt requested, or (iii) forwarded by a nationally recognized overnight courier service, addressed to each party hereto at the address of each party set forth above or at such other address in the United States as Lessor or Lessee may from time to time designate in writing and deliver to the other party.

**15.4. Successors and Assigns.** Each and every covenant, term, condition and obligation contained in this Lease shall apply to and be binding upon and inure to the benefit or detriment of the respective legal representatives, successors and assigns of Lessor and Lessee. Whenever reference to the parties hereto is made in this Lease, such reference shall be deemed to include the legal representatives, successors and assigns of Lessor and Lessee as if in each case expressed. The term "Person" when used in this Lease shall mean any individual, corporation, partnership, firm, trust, joint venture, business association, syndicate, government or governmental organization or any other entity.

**15.5. Headings.** The headings to the various sections of this Lease have been inserted for purposes of reference only and shall not limit or define the express terms and provisions of this Lease.

**15.6. Counterparts.** This Lease may be executed in any number of counterparts, each of which is an original, but all of which shall constitute one instrument.

**15.7. Applicable Law.** This Lease shall be construed under and enforced in accordance with the laws of the State of Ohio.

**15.8. All Genders and Numbers Included.** Whenever the singular or plural number, or masculine, feminine or neuter gender is used in this Lease, it shall equally apply to, extend to and include the other.

**15.9. Time of the Essence.** It is specifically agreed that the timely payment of each and every installment of rent and performance of each and every one of the terms, covenants and conditions hereof is of the essence of this Lease.

**15.10. Attorney's Fees.** Lessee shall pay all reasonable costs and expenses, including attorneys' fees, that shall be made or incurred by Lessor in enforcing the terms and conditions of this Lease.

737012.13

**15.11. Short Form Lease.** The parties will at any time at the request of either one, execute duplicate originals of any instrument in recordable form which will constitute a short form lease or memorandum of lease setting forth the description of the Leased Premises and the Term of this Lease so that it will not be necessary to record this Lease in its entirety.

**15.12. Amendment or Modification.** This Lease contains the entire agreement of the parties, and no amendment or modification of this Lease shall be valid or binding unless expressed in writing and executed by the parties in writing hereto in the same manner as the execution of this Lease.

**IN WITNESS WHEREOF,** the parties have executed this Lease as of the date first written above.

LESSOR:

_/s/ Brownlee Reagan_
Brownlee Reagan

LESSEE:

FORTUNE GROUP HOSPITALITY, LLC

By: _/s/_
Name: PAUL LIANG
Title: MANAGING MEMBER

# EXHIBIT A

## DESCRIPTION OF LEASED PREMISES

(SEE ATTACHED)

737012.12

Case 12-58938-pwb   Doc 142   Filed 12/19/12   Entered 12/19/12 14:36:38   Desc Main
Document - Motion to Sell   Page 7 of 10

## Legal Description

PARCEL I:

Situated in the State of Ohio, County of Franklin, City of Columbus, being in Section 21, Township 12, North, Range 21 West, Refugee Lands containing approximately 7.689 acres of land, being part of that original 69.577 acre tract as conveyed to Eastland Investment Company by deed of record in Deed Book 3153, page 535, (all references to Deed Books and Plat Books in this description refer to the record of the Recorder's Office, Franklin County, Ohio), said 7.689 acres being more particularly described as follows:

Beginning, for reference, at a point in the northerly right-of-way line (60 feet in width) of the T & O C Railroad, said point located S 89° 43' 46" E, a distance of 874.19 feet from the centerline of Hamilton Road, said point being the southeasterly corner of a 4.498 acre tract, as conveyed to the State of Ohio, of record in Deed Book 2621, page 310 and Deed Book 2642, page 433, said point being also the southwesterly corner of said 69.577 acre tract; thence S 89° 43' 46" E, with the southerly line of said 69.577 acre tract, a distance of 790.98 feet to a point, passing an iron pin at a distance of 750.98 feet, said point being in the centerline of Cloverleaf Street East (80 feet in width) as same is shown upon the recorded plat of "DEDICATION OF CLOVERLEAF STREET EAST" of record in Plat Book 41, page 112; thence N 0° 22' 16" W, with said centerline and the same extended northerly, a distance of 560.03 feet to an iron pin at the TRUE POINT OF BEGINNING of the herein described tract:

Thence, from said true point of beginning, N 89° 43' 46" W, parallel with and 560.00 feet northerly from (as measured at right angles) the northerly right-of-way line of said Railroad, a distance of 220.36 feet to a point of curvature;

Thence, with the arc of a curve to the left having a radius of 340.00 feet, whose chord bears S 70° 16' 14" W, a chord distance of 232.57 feet to a point of tangency;

Thence S 50° 16' 14" W, a distance of 68.88 feet to a point;

Thence N 39° 43' 46" W, perpendicular to the preceding course, a distance of 160.80 feet to a point;

Thence N 0° 22' 16" W, parallel with and 595.00 feet westerly from (as measured at right angles) the said centerline extended northerly, a distance of 412.90 feet to a point in the southerly limited access right-of-way line of Interstate Route No. 70, as same is shown on plans for FRA-70-18.69, said point being in the southerly line of a 45.139 acre tract conveyed to the State of Ohio, of record in Deed Book 2621, page 307 and Deed Book 2643, page 450, said point also being the northerly line of the aforementioned 69.577 acre tract.

Thence, with said southerly limited access line and the northerly line of said 69.577 acre tract, by the following three (3) courses and distances;

N 35° 52' 27" E, a distance of 50.17 feet to a point,